**Teofilo TELLEZ, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 49637, 49638.**

Court of Criminal Appeals of Texas.

April 30, 1975.

Ronald R. Flake, San Antonio, for appellant.

Ted Butler, Dist. Atty., Sharon MacRae and Douglas C. Young, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

The conviction in Cause No. 49,637 was for the offense of burglary of a building with intent to commit theft under Article 1390, Vernon's Ann.P.C. (1925), in effect in 1973 at the time of indictment. The conviction for the burglary of a vehicle in Cause No. 49,638 was pursuant to Section 30.04, V.T.C.A. Penal Code (effective January, 1974).

The trial judge, in admonishing appellant, stated that the range of punishment was from two to ten years in the first case. The statute provided for a punishment of two to twelve years. In the second case the admonishment was correct as to the number of years, but the court omitted Section 12.34, Subsection b, V.T.C.A. Penal Code, which provides:

"(b) In addition to imprisonment, an individual adjudged guilty of a felony of the third degree may be punished by a fine not to exceed $5,000."

After the court ascertained that appellant wished to plead guilty, the following occurred:

"THE COURT: In addition, you have the right to remain silent, you don't have to make any statement, confess to

anything, agree to anything or stipulate to anything. It is up to the State to prove your guilt by competent evidence. It is not up to you to prove your innocence. Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: I have to get the punishment range here, the range of punishment. Do you know, offhand?

"MR. FLAKE: (Defense counsel) Your Honor, it is two to ten on the burglary. For the breaking and entering a motor vehicle—

"THE COURT: Burglary with intent to commit theft, that is the first one.

"MR. FLAKE: Well, it is two to ten on both of them, Your Honor.

"THE COURT: Two to ten. Are we certain of that?

"MS. MacRAE: (Prosecutor) Yes, sir. The burglary occurred on the 17th of October, 1973.

"THE COURT: So, that is two to ten?

"MS. MacRAE: Yes, sir.

"THE COURT: The other one is burglary of a vehicle and that is two to ten, too; is that correct?

"MS. MacRAE: Yes, sir.

"THE COURT: Mr. Tellez, for the record, in Cause Number 73–CR–2436 in which you stand charged with the felony offense of burglary with intent to commit theft, the possible punishment, in the event you are found guilty, is a minimum of two years and a maximum of ten years in the Texas Department of Corrections.

In Cause Number 74–CR–832–B, in which you stand charged by indictment with the felony offense of burglary of a vehicle, the range of punishment, in the event you are found guilty, is from a minimum of two years to a maximum of ten years.

Knowing what the possible punishments may be in each or both of these cases, knowing what your legal and constitutional rights are, do you still desire to change your respective pleas in both of these cases from not guilty to guilty and do you still desire to waive a jury in each and both of these cases?

"THE DEFENDANT: Yes, sir."

The appellant waived a jury and entered pleas of guilty in both cases. He made a judicial confession and evidence was introduced. The judge found appellant guilty and asked for recommendations. The prosecutor recommended four years. The court assessed the punishment at four years in each case. After a hearing, the court denied probation and gave appellant credit from the time he was first arrested.

Defense counsel wrote in his brief that the trial court, "although not complying with the exact wording of Article 26.13, V.A. [Vernon's Ann.] C.C.P., did substantially comply with said article."

Alvarez v. State, 511 S.W.2d 521 (Tex. Cr.App.1974), is directly in point. The writer agreed to the reversal on the basis of former opinions. After further consideration, it appears that the Alvarez decision and some of its predecessors were wrong.

Judge Morrison, joined by Judge Odom, dissented to the reversal. The reasoning in that dissenting opinion is logical. It is as follows:

"It would appear that this question has divided this Court before. See Valdez v. State, Tex.Cr.App., 479 S.W.2d 927; Jorden v. State, Tex.Cr.App., 500 S.W.2d 117, and Cameron v. State, Tex.Cr.App., 508 S.W.2d 618.

"Surely if an accused would voluntarily plead guilty thinking his punishment might be life (which is the admonish-

ment the majority say should have been given), then his plea based upon the assumption that his punishment could be no higher than 20 years would likewise be voluntarily made.

"Logic dictates that the Legislature by the enactment of Art. 26.13, V.A.C.C.P., required that an accused be admonished of the consequences of his plea of guilty to avoid a situation where an accused thought his possible punishment could be a certain number of years and then (after he had entered his plea of guilty) learn that he had been assessed a greater punishment. Such a situation did not arise in the case at bar.

"We should adopt the holding in the cases cited above and hold that this appellant was not misled to his prejudice and that the error of the court in his admonishment was a harmless error."

Even though a rule has been established for a long time, if there is no logical or reasonable basis for such a rule, it should be overruled. See Guster v. State, Tex.Cr. App., 522 S.W.2d 494 (delivered this date), and Williams v. State, Tex.Cr.App., 522 S.W.2d 483 (No. 49,498, delivered this date). See also Ex parte Taylor, Tex.Cr.App., 522 S.W.2d 479 (1975).

The dissenting opinion contains no reasons except that the Court has held otherwise for a long time and that the statute is mandatory. It does not attempt to show why this statute, where no harm has been claimed, should be given some sort of special interpretation or status when harm has to be shown if other mandatory statutes and constitutional provisions are not followed to the letter. See Jones v. State, 496 S.W.2d 566 (Tex.Cr.App.1973), where the failure to require the court reporter to take down the voir dire examination of the jury panel was held not to be reversible. In Hill v. State, 480 S.W.2d 200 (Tex.Cr. App.1972), there was no reversible error where appointed counsel was not given ten days by the learned trial court to prepare for a revocation of probation hearing. See

also the cases cited in the concurring opinion in Williams v. State, supra.

The main thing wrong with the decision in this case is that it has been too long in coming. As the late Judge W. L. Davidson said in Cline v. State, 36 Tex.Cr.R. 320, 36 S.W. 1099 (1896): "[A]djudicated error, persisted in, cannot make truth of that error." Just because we have been in error in the past does not justify further error. Alvarez v. State, supra, and all cases to the extent that they are contrary to this opinion are overruled.

The judgments are affirmed.

ROBERTS, Judge (dissenting).

At last the majority have succeeded in burying the last remains of Art. 26.13, V. A.C.C.P. We should all be relieved to know that our jurisprudence is now free of that troublesome statute which continued perversely to exist despite having undergone the most remarkable judicial surgery ever suffered by any legislative enactment.

By a process of elimination that was truly wonderful to contemplate, the majority have erased, element by element, the entire body of Art. 26.13 from our Code of Criminal Procedure. First it was determined that an admonishment as to "delusive hope of pardon" was an unnecessary and useless thing. Being unnecessary, it was quickly eliminated. See Espinosa v. State, 493 S.W.2d 172 (Tex.Cr.App.1973); Mitchell v. State, 493 S.W.2d 174 (Tex.Cr.App.1973); and Clayton v. State, 493 S.W.2d 176 (Tex.Cr.App.1973). Next, it was perceived that an admonishment regarding "persuasion" really served no good purpose and it too was eliminated. See Mayse and Ross v. State, 494 S.W.2d 914 (Tex.Cr. App.1973); Johnson v. State, 500 S.W.2d 115 (Tex.Cr.App.1973); and Bosworth v. State, 510 S.W.2d 334 (Tex.Cr.App.1974). Only lately, our majority has recognized that admonishment as to "fear" does little, if any, good in the determination of the voluntariness of a plea. Hence, admonishment as to "fear" is cast aside. See Mayse

and Ross v. State, supra, and Guster v. State, Tex.Cr.App., 522 S.W.2d 494 (delivered April 30, 1975).

Before today, however, it was firmly established by the majority that the first portion of Art. 26.13, being separated by a semi-colon from the rest, was without a shadow of a doubt absolutely and unquestionably mandatory. See Alvarez v. State, 511 S.W.2d 521 (Tex.Cr.App.1974) and the concurring opinion in Cameron v. State, 508 S.W.2d 618 (Tex.Cr.App.1974).

But today, it is no longer convenient, in the majority's view, to hold that *any* portion of the statute is mandatory, and therefore the majority will do, by judicial fiat, what the Legislature of our State has consistently declined to do. Never mind that the Legislature made the statute mandatory in all its parts. Hereafter, *no* part of Art. 26.13 need be considered mandatory, since a majority of the Court of Criminal Appeals, acting in its well-established capacity as a superior legislative body, has simply amended the statute.

It fills this writer with a wonderful sense of accomplishment to see this Court, at last, joining the illustrious Supreme Court of the United States in declaring the law of the land to be whatever a majority of the membership desire it to be, rather than what the Legislature, with its muddled thinking and limited viewpoint, has chosen to enact.

This commendable action of the majority, in addition to eliminating our need to rely upon the cumbersome and ineffective device of an elected legislature, will have the most salutary effects on the administration of justice in criminal cases. The purpose of Art. 26.13 was to insure to an accused person in a criminal case that at least one person would be impartial and objective in ascertaining whether he had knowingly and willingly waived those rights guaranteed him by the Constitution of this State and of the United States. The

process was, admittedly, somewhat time consuming and, if the number of cases on the subject be an indication, somewhat confusing to trial judges. Happily, this shall all pass away, and vast numbers will soon speed to their just desserts, secure in the knowledge that no one will trouble himself even to inquire if they are aware of what is happening to them. It is a prospect of such felicity as to warm the heart of any person who prefers the blessings of efficiency to the afflictions of doing justice.

Recent statistics indicate that almost 33 percent of the inmate population of the Texas Department of Corrections have an IQ level of less than 90 points.[1] When the provisions of Art. 26.13 were followed, they insured that even the least of these were at least given an opportunity to comprehend the nature and consequences of the proceedings against them. This is so no more, and we have this day eliminated the duty of the courts of this State to insure that every plea of guilty entered before them is done voluntarily and willingly and knowingly.

Fortunately, the majority's reliance upon cold logic has prevailed over the illogical and incomprehensible decision of the Legislature that a mandatory statute should be mandatory. Hopefully, we can look forward to more and more instances in which a majority of this Court will substitute its judgment for that of the Legislature, so that we can rapidly approach that happy day in which our courts will be ruled by "common-sense" and individual discretion, rather than the rules of law which some people can neither understand nor follow. This will greatly simplify our criminal procedure, enabling us to hustle away more and more people and relieving the crowded dockets of our courts, while at the same time insuring to all our citizens that their rights will exist at the whim of the individual judge.

On appeal, we need no longer concern ourselves with these people since, having

---

1. This figure was taken from a paper presented at the State Bar Criminal Law Institute in San Antonio, Texas on July 3, 1974.

pleaded guilty, they must surely *be* guilty. Surely, if an accused would plead guilty thinking his punishment might be life, his plea would be no less voluntary if he were told that the maximum punishment was 20 years.

Of course, this reasoning by the majority ignores the fact that the Legislature may have intended that we assume that an accused does not know the correct range of punishment *before* he enters his plea, and that if he did, he might decline to plead guilty. Let us assume, in the example given by the majority, that the accused does not know the range of punishment. The court tells him the maximum is 20 years, when in fact, it is imprisonment for life. The accused pleads guilty and is assessed ten years' confinement. The majority says this is harmless because the accused was not assessed more than he thought he would receive.

But isn't the focus of the majority just a little too narrow? Don't they miss the forest for the trees? The question here is the voluntariness of the plea, and the term "voluntary" requires that the plea be entered with knowledge of its consequences. How can the accused in the example be said to have voluntarily entered his plea when it is obvious from the situation that he could not know the range of punishment, hence the consequences, of his plea? The plea is made in ignorance. It is made on the basis of an incorrect and misleading statement. Therefore, by definition, it cannot be voluntary.

But the majority, focusing on the accused's obvious guilt, would say the accused was not misled to his injury. This would be a perfectly reasonable approach if the question before us in these cases was the guilt or innocence of the accused. It is not. The question before us is, for the purposes of Art. 26.13, the voluntariness of the accused's pleading. He may be as guilty as Judas, and the evidence of his guilt may be overwhelming, yet he has the right to a trial; and if he is cheated of that right, even though it be done through inadvertence, our system has failed.

The assumption that an accused would not, or might not, plead guilty if informed of the correct range of punishment is at least as reasonable, if not more so, than the majority's assumption that he would do so. The majority's assumption is tied to, and colored by, their assessment of the accused's guilt, and once again, that question is not before us.

For the majority, logic dictates that the legislative purpose of Art. 26.13 is to prevent a situation in which an accused pleads guilty anticipating one range of punishment but receives a greater one. If, however, Art. 26.13 has no relation to guilt, but relates to the voluntariness of the plea, does not logic dictate that its purpose is to insure that the plea is knowingly entered on the basis of a *correct* statement of the consequences of the plea? It must and surely does.

We must close our eyes, for the moment, to the guilt of the accused, and look to another issue. Obviously, that is not an easy task, for it is hard to give to a patently guilty man the same benefits and advantages given to the innocent. Yet, someone must take up that burden, and it is the Legislature's decision that it be carried by those who can be impartial: the judiciary of our State. It is no answer to argue that there is no logical or reasonable basis for the rule, for there is. It is no answer to say that the accused was not misled to his prejudice when, if he was misled, his rights must have been prejudiced. Unfortunately, it is obvious from the mandatory language of Art. 26.13 that the Legislature did not intend to provide this Court with the "easy" way out of this area that the majority seeks to follow.

This writer once stated that he would no longer dissent to the majority's actions in ignoring the clear requirements of Art. 26.-13, *provided* that the majority did not seek to go further in eliminating the statute. See Bosworth v. State, supra, 510 S.W.2d

at pp. 334–345. Since the majority have now simply erased the statute from our law, I feel justified in rejecting their action in its entirety.

I vigorously dissent to the affirmance of this conviction.

ONION, P. J., joins in this dissent.